### 33786.   DOMIN *v*. THE STATE.

DECIDED MARCH 18, 1952.

*Conger & Conger,* for plaintiff in error.
*Maston O'Neal, Solicitor-General,* contra.

TOWNSEND, J. (After stating the foregoing facts.) Obviously both the demurrer to the indictment and the plea seeking to test the validity of the election were interposed by counsel for the defendant under the authority of *Glass* v. *State*, 75 *Ga. App.* 602 (44 S. E. 2d, 143), wherein such defenses were invited by the second division of this court as it was then constituted, which opinion was prepared by the writer. This case has been attacked by the solicitor-general as being in conflict with certain Supreme Court decisions and in some respects as being obiter. A thorough consideration and a frank discussion of the *Glass* case is therefore proper in connection with this opinion.

■ In division 3 thereof at page 607, it is held as follows: "Whether the county be 'wet' or 'dry' is a question of fact, depending upon whether or not a valid election has been held under § 58-1003 of the Code (Ann. Supp.), in which a majority of the voters favored taxing, legalizing, and controlling alcoholic beverages and liquors; and if so, dependent upon whether or not 2 years or more thereafter a valid election was held under § 58-1010a [§ 58-1010.1] of the Code (Ann. Supp.), at which a majority voted in favor of nullifying the previous election. Whether the county be 'wet' or 'dry' has been held to be a proper allegation in the indictment. See *Smith* v. *State*, 62 *Ga. App.* 484. We construe such allegation to be an essential part of the indictment and as matter which the State must establish by proof." *Smith* v. *State*, 62 *Ga. App.* 484 (8 S. E. 2d, 94), contained an allegation in the indictment that the county was dry. A demurrer was interposed to this indictment but not on this ground. This court approved the indictment. However, this case is not authority for the holding that such an allegation is essential. On the contrary, it is well setlled that whether a county is wet or dry is a matter of which the court may take judicial cognizance. *Combs* v. *State*, 81 *Ga.* 780 (8 S. E. 318); *Hall* v. *Simmons*, 54 *Ga. App.* 568 (188 S. E. 597); *Leonard* v. *State*, 204 *Ga.* 465 (4) (50 S. E. 2d, 212). Since, as held in the *Glass* case, supra, "all duties of the ordinary required by the sections of the Code (Ann. Supp.) referred to in the preceding headnote, in connection with the calling and the declaration of the result of such an election are presumed to be properly and legally performed," and since the ordinary did declare the result of this election, it was proper for

the trial court to take judicial notice that Decatur County was a dry county at the time of his ruling on the demurrer in the instant case. That much of the *Glass* case is erroneous as— since it was in direct conflict with prior decisions—the older cases must control. The trial court did not err in overruling the demurrer to the petition.

■ It is held in headnote 3 of the *Glass* case as follows: "One charged with a penal violation of Chapter 58-10 of the Code, Ann. Supp. (Revenue Tax Act to Legalize and Control Alcoholic Beverages and Liquors, Ga. L. 1937-38, Ex. Sess., pp. 103, 104) has the right to file a special plea testing the validity of the election, and if it be made to appear that the election was called by the ordinary on the petition of less than 35 percent of those qualified, it is a nullity." This part of the *Glass* case is contended by counsel for the State to be obiter. However, it appears that in the *Glass* case such a plea was filed and evidence heard in support thereof. The State offered evidence against the plea, and the case was reversed because a part of the State's evidence was hearsay. Had the question of the right to file the plea by the defendant not been considered by this court, then and in that event the evidence in opposition to the plea, although error, would have been harmless, since "no amount of errors will send a case back for a rehearing when a different verdict could not stand for want of evidence to support it." *Rowe* v. *Ware*, 30 *Ga.* 278. It follows, therefore, that the holding as to the right of the defendant to file a plea, in the *Glass* case, is not obiter, the defendant there having admitted possession of the whisky, and the issue being the illegality in the call of the election.

It is also contended by counsel for the State that the defendant cannot collaterally attack the election. In support thereof he cites *Caldwell* v. *Barrett,* 73 *Ga.* 604, and *Woodard* v. *State,* 103 Ga. 496 (30 S. E. 522).

The *Caldwell* case holds in substance that, where a local act prohibits the sale of liquor in a county subject to referendum, which is therein provided for and which specifies that the county commissioner shall canvass the votes and declare the result, a court of equity is without power to enjoin such commissioner from declaring the result, there being no such power provided for in the act or otherwise conferred by law. The *Woodard* case

holds in substance that a person indicted under a local-option liquor law after an election against the sale cannot attack by plea or otherwise the validity of the election. These cases do not decide whether an election may be collaterally attacked or not. They and other cases dealing with local liquor laws, no-fence laws, and other laws providing for a referendum prior to their going into effect, and providing for a declaration of the result by some officer named in the act to perform this duty, imply that the validity of such an *election* cannot be attacked by any means. However, in *Barrentine* v. *Griner*, 205 *Ga.* 830 (55 S. E. 2d, 536), it is held in substance that, while courts of equity do not deal with election contests, equity will lie to declare an election void where a lack of authority to *hold* the election is alleged. Headnote 3 (a) holds as follows: "While, as a general proposition, courts of equity do not deal with contests of elections, and in matters touching the exercise of political functions the method of determining the result of an election pointed out by the legislature is ordinarily the one to be followed, the question in the present case is of a different character. It is not an election contest. It is an attack upon an election as being absolutely void, because of a lack, of authority to hold the election due to a noncompliance with a mandatory prerequisite. There is a marked distinction between mandatory provisions of the law in regard to the calling of an election and those which are merely directory to the officials in holding them. A substantial violation of mandatory provisions affects the validity of the election, while a failure of strict compliance with directory provisions of the law, or mere irregularities on the part of election officers, will not generally do so; and the latter are usually the subject matter of contests. To hold that the action of an official in declaring the result of an election is conclusive and cannot be questioned in a court of equity, even where the official is clothed with no authority to hold the election' because of a noncompliance with mandatory prerequisites, would lead to absurd results. For instance, in a special election on the question of legalizing the sale of liquor, an ordinary could, in disregard of all requirements, immediately, on his own initiative, call and hold a pretended election and announce that the county was 'wet' or 'dry'. Would the courts, in such a case, be powerless to act,

and would they of necessity be compelled to announce to the public that the action of the ordinary was conclusive, and the courts were without authority to declare the election void? We think not." See also *Whittle* v. *Whitley,* 202 *Ga.* 633 (2) (44 S. E. 2d, 241). There is no decision which the writer has been able to find holding that, where the validity of an election is at issue, it cannot be collaterally attacked if it can be attacked in equity. *Skrine* v. *Jackson,* 73 *Ga.* 377; *Caldwell* v. *Barrett,* supra. *Woodard* v. *State,* supra, and other cases dealing with elections following a referendum indicate that no attack can be made on them from any source. Our Supreme Court in *Barrentine* v. *Griner* and *Whittle* v. *Whitley,* supra, clarifies this question by holding that they may be attacked *in equity* because of failure to comply with conditions precedent in the *calling* of the elections. It is not held in those cases or elsewhere that this is the only means of making the attack.

It follows, therefore, that prior to the decision in the *Glass* case it was a matter of first impression in this State whether or not an election held under the Revenue Tax Act to Legalize and Control Alcoholic Beverages and Liquors (Ga. L. 1937-38, pp. 103, 104) could be collaterally attacked by the filing of a plea on behalf of the defendant, showing that such election was a nullity because of failure to comply with *conditions precedent to the calling thereof.*

That part of the *Glass* case, therefore, holding that it is the right of a defendant to file such a plea is the law of this State, there being no judicial authority to the contrary and it not being obiter dictum in that decision.

■ When the matters discussed in the second division hereof were pointed out to the whole court—considering this case as provided by the act of 1945 (Ga. L. 1945, p. 232)—it was decided by the court that, while the decision is not in violation of any judicial precedent, it is required by none. It was further decided that the decision in the *Glass* case is unsound because, if such a procedure were permitted, it will lead to confusion and will make the enforcement of this phase of the criminal law imprac- ticable. It will create confusion worse confounded. It will be catastrophic to allow the validity and result of such an election to be contested every time the result, as determined by the proper

election officers, becomes material collaterally in a criminal case such as the one under consideration. In the present case, the defendant might have proved facts showing the election to be void for one cause or another. Another defendant charged with a like offense might be less fortunate, for the State might in his case show that the same election was regular and valid, etc., indefinitely.

The writer, in accepting full responsibility, not only for the error of law in the *Glass* case pointed out in division 1 hereof, but also for the error of judgment pointed out in division 2 hereof, fully realizes that the defendant and his counsel have gone to great expense and trouble in the preparation of evidence to support the plea. This fact is fully supported by the record, and the writer is indeed sorry that he played such a prominent role in causing it. However, the proper judicial function is, first and always, to adhere strictly to the law, but where the law is susceptible of more than one construction, then to adopt that which is most beneficial to society as a whole. The court, therefore, overrules so much of the *Glass* decision as authorizes one charged with a penal violation of Chapter 58-10 of the Code (Ann. Supp.) to file a special plea testing the validity of the election. In view of this action, the trial court did not err in overruling the motion for a new trial as amended.

This case was considered by the whole court as provided by the act approved March 8, 1945 (Ga. L. 1945, p. 232.)

*Judgment affirmed. All the Judges concur.*